Richard **BIRNBERG** et al., Plaintiffs,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Defendants.

Civ. A. No. 74–1740.

United States District Court,
D. Columbia,
Civil Division.

Feb. 14, 1975.

Patricia Roberts Harris, Washington, D. C., for plaintiffs.

Peter Ciano, William H. Horkan, Washington, D. C., Kenneth B. Tecler, Rockville, Md., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

This cause having been heard on the merits on February 6, 1975, and this Court having considered the extensive record and the arguments of counsel, we make the following findings of fact and conclusions of law.

The plaintiffs are homeowners and residents of Yuma Street, N. W., Washington, D. C. They bring this action for declaratory and injunctive relief attacking the validity of the decision by the Board of Directors of defendant Washington Metropolitan Area Transit Authority (hereinafter "WMATA") to route the A9(a) segment of the rapid rail transit system under Yuma Street.

The defendant WMATA is an agency and instrumentality of the District of Columbia, Maryland and Virginia, and is engaged in the planning and construction of the transit system to serve the Washington Metropolitan area.

Plaintiffs and their neighbors have opposed the Yuma Street alignment since before the adoption of the system plan in 1968. Prior litigation concerning the alignment was brought in early 1973, Saunders v. WMATA, 359 F.Supp. 457, (D.D.C.). Judge Robinson of this Court upheld the Board's decision to align the route under Yuma Street but held that public hearing directed specifically to the issue of fan and vent shaft location was required by the WMATA Compact. Defendant WMATA held the mandated hearing on fan and vent shafts in July, 1973. Plaintiffs, prior to that hearing, appealed, Saunders, supra, D.C.Cir. No. 73-1798 and 73-1799, November 21, 1973. The U. S. Court of Appeals for the District of Columbia reversed and remanded, 159 U.S.App.D.C. 55, 486 F.2d 1315, directing that WMATA prepare a study of the relevant impact on the environmental and aesthetic amenities of the Yuma Street alignment and of alternate alignments. The Court also ordered that the defendant hold public hearings on the various alignments and their relative impacts.

At a series of regular and specially-called meetings of the WMATA Board beginning in late January, 1974, the Board of Directors instigated and pursued the study of the relative environmental and aesthetic amenities of the A9(a) Yuma Street alignment and alternative alignments. The Board retained a firm of consultants to conduct the study and thereafter instructed the consultants and the staff as to the further course of the study and reviewed the preliminary report of the consultants.

In May, 1974, the consultants issued the completed study entitled "Environmental Study for Rockville Route Segment A9(a), Yuma Street and Alternative Alignments." The study was presented to the Board and released and distributed by the Board to the public. The study found that the key decision to be made by the WMATA Board with respect to alignment, whether to retain the Tenley Circle Station, was a value judgment. Further, the consultants noted that although there were alternatives with less local impact than Yuma Street, notably the Davenport alternatives, these alternatives precluded Tenley Circle Station. Of the alternatives which included the Tenley Circle Station, the Yuma Street alignment was found to have the least environmental impact.

Pursuant to § 15 of the WMATA Compact,* the Board directed that public hearings be held on July 9, 10, and 11, 1974, to solicit the comments and criticism of citizens on the proposed alignment under Yuma Street, including the environmental and aesthetic impact on Yuma Street or the alternative alignments.

The defendant conducted the hearings on July 9, 10, and 11, 1974. The staff of WMATA there described the alignment and the alternatives, explained the procedures to be followed and solicited questions and comments from the public. The previous hearing of July 10, 1973, held to consider the location of fan and vent shafts, was consolidated with the July, 1974 hearings as directed by Judge Robinson in the initial Saunders Order. The record was held open for further written comments by the public.

On September 12, 1974, the Board received a staff report on the A9(a) public hearings. This report considered the environmental study, the testimony at the July, 1973 and July, 1974 hearings, the letters submitted by the public, and other materials. The staff report recommended that the Yuma Street alignment and the location of the Tenley Circle Station be approved and that the fan and vent shafts be located on private

---

* Washington Metropolitan Area Transit Authority Compact of 1966, P.L. 89-774, 80 Stat. 1324, note following D.C.Code 1-1431.

property. The staff report was sent to all interested parties for comment.

After receipt of copies of the environmental report, a transcript of the July hearings, a copy of the staff report and of the letters submitted by the public in response to the study or the staff report, the Board of Directors unanimously adopted a resolution approving the A9(a) Yuma Street alignment and the location of the fan and vent shafts on private property on September 26, 1974.

Plaintiffs challenge the sufficiency of the foregoing procedure on essentially two grounds: the lack of a quorum of Directors at the July hearings; and the failure of the Directors to give appropriate weight to the hearings, and, specifically, the absence of findings or statements by the Board to support their decision. In addition, plaintiffs allege that the action of the Board was arbitrary and capricious.

Upon consideration of these facts, which are not substantially disputed by the plaintiffs, we find that the defendant WMATA has complied literally and substantially with the terms of the *Saunders* Order on remand and has followed the procedures required by its governing statute, the Compact.

■■ First, we hold that a quorum of the Board of Directors of WMATA is not required to be present at public hearings. Neither the WMATA Compact nor the Order in *Saunders* contain such a requirement. Therefore, the public hearings held on July 9, 10, and 11, 1974, were not defective for absence of a quorum of the Board. Nor was it necessary that the Board members who attended the public hearings be the same Board members who ultimately voted to adopt the Yuma Street alignment. The cases upon which plaintiffs rely are distinguishable in that they concern express statutory provisions requiring the presence of a quorum of decision-makers at the relevant hearings. See, e. g., Allen v. Zoning Commission of D. C., 146 U.S.App.D.C. 24, 449 F.2d 1100 (1971).

■ We further find that decisions of the WMATA Board, like those of administrative bodies, are entitled to a presumption of validity. Accordingly, the Board of Directors must be presumed to have read and properly considered all items in the record in making their decision on the A9(a) alignment. National Nutritional Foods Assn. v. Food and Drug Administration, 491 F. 2d 1141 (2d Cir. 1974); Willapoint Oysters v. Ewing, 174 F.2d 676 (9th Cir. 1949), cert. denied, 338 U.S. 860, 70 S. Ct. 101, 94 L.Ed. 527 (1949); Braniff v. Civil Aeronautics Board, 126 U.S.App. D.C. 399, 379 F.2d 453 (1967). Plaintiffs did not rebut the presumption. Since the Board must be presumed to have considered the record and plaintiffs have introduced no evidence to show bad faith, the mental processes of Board members may not be probed to test the manner and extent of their consideration of the record. National Nutritional, *supra;* United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1940).

■ The WMATA Board is likewise not required to make a statement of findings or reasons to support its decisions. The defendant is a quasi-legislative body engaged in the planning and construction of a rapid rail transit system and, as such, its decisions are not subject to any constitutional or statutory due process requirement mandating findings or reasons. Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935); Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). The Administrative Procedure Act does not apply to WMATA inasmuch as the Authority is not a federal agency. Williams v. WMATC, 134 U.S.App.D.C. 342, 415 F. 2d 922 (1968), cert. denied sub nom. D. C. Transit v. Williams, 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969); Saunders v. WMATA, supra. Again, the case law cited by the plaintiffs is inapposite in that the cited cases are primarily adjudicatory decisions or are gov-

erned by specific statutory requirements. See, e. g., Ideal Farms, Inc. v. Benson, 181 F.Supp. 62 (D.N.J.1960), aff'd 288 F.2d 608 (3d Cir. 1961), cert. denied, 372 U.S. 965, 83 S.Ct. 1087, 10 L.Ed.2d 128 (1963); Braniff Airways, Inc. v. CAB, 113 U.S.App.D.C. 132, 306 F.2d 739 (1962).

Nor are findings or reasons required by this Court for purposes of judicial review. Here there is a full administrative record which facilitated review of the Board's decision by the Court. Thus, there is no necessity in this case for findings or reasons. EDF v. Corps of Engineers, 470 F.2d 289 (8th Cir. 1972), cert. denied, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160; Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Without substituting our judgment for that of the WMATA Board or indicating how we would personally have decided this matter, we find that the decision of the Board has ample support in the record and is therefore not arbitrary, capricious, or irrational. EDF v. Corps of Engineers, *supra;* Automotive Parts & Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 407 F.2d 330 (1968). The Board's decision followed lengthy and detailed administrative process which is rarely in our experience exceeded in length or thoroughness. The key decision, as indicated by the environmental report, was the retention or elimination of the Tenley Circle Station. That decision was a value judgment involving many factors, including environmental impact, and has ample support in the record. Having decided to retain the Tenley Circle Station, the selection of the Yuma Street alignment was in accordance with the evidence considered, including the environmental consultant's report. Thus, the decision of the Board withstands any challenge on its merits.

As to the subsidiary issue of fan and vent shaft location, we hold that the decision appears to have been the result of the testimony at the public hearings in 1973 and 1974, and will have less environmental impact on residential Yuma Street than the previously proposed location on public property. Thus, this decision also finds ample support in the record.

The foregoing obviates any need for us to discuss defendant's urgent public interest claims, and, accordingly, we express no opinion on the relative equities involved in this case.

For the foregoing reasons, we grant judgment for the defendant. An Order consistent with the foregoing has been entered this day.